# Exhibit K

Newspapers.com
by ancestry
https://www.newspapers.com/image/366871225

The Des Moines Register (Des Moines, Iowa) · Sun, Jan 14, 2018 · Page A1
Downloaded on May 12, 2025



Copyright © 2025 Newspapers.com. All Rights Reserved.

Newspapers
by ancestry
https://www.newspapers.com/image/366871257/

The Des Moines Register (Des Moines, Iowa) · Sun, Jan 14, 2018 · Page A10
Downloaded on May 12, 2025

10A ‖ SUNDAY, JANUARY 14, 2018 ‖ DES MOINES SUNDAY REGISTER METRO EDITION

# MEDICAID DENIAL    AN ENDEMIC PROBLEM

## IOWA MEDICAID RECIPIENTS BATTLE TO GET CARE



### BETTY FRINK

**Nursing care denied
for ill Des Moines woman**

**The patient:** Betty Frink, 64, of Des Moines has pancreatic cancer and is homebound. She also has multiple chronic conditions including diabetes, obesity and a degenerative back problem.
**Care denied:** Medicaid provider Amerigroup denied a request from Frink's doctor to provide her with nine nursing or social worker visits over two months to assess her pain levels, document her diabetic management and assess other medical conditions, saying the home care wasn't necessary.
**The ruling:** Amerigroup's denial was upheld June 2, 2017, by Iowa Administrative Law Judge Charles Tarvin, who said medical records show Frink's conditions were well controlled. Chuck Palmer, then-director of the Iowa Department of Human Services, upheld Tarvin's ruling June 16.
**The appeal:** Frink challenged the denial as arbitrary, unconstitutional and inconsistent because DHS previously had provided her the service. On Jan. 9, Polk County District Court Judge Eliza Ovrom ruled in Frink's favor, saying records show the state's decision to deny the care "is unreasonable, arbitrary, capricious or an abuse of discretion."



### NATHAN MCDONALD

**Ankeny man with cerebral palsy
can 'be a little dirty'**

**The patient:** Nathan McDonald, 32, of Ankeny has cerebral palsy, asthma and high blood pressure.
**Care denied:** AmeriHealth in January 2017 cut McDonald's in-home medical service visits to five times a week, rather than the twice-daily visits he had received since 2015 to help him live independently. AmeriHealth's Dr. Brian Morley testified that it wasn't necessary for McDonald to receive daily assistance to clean himself after bowel movements. "People have bowel movements every day where they don't completely clean themselves, and we don't fuss over (them) too much. ... You know, I would allow him to be a little dirty for a couple of days."
**The ruling:** Iowa Administrative Law Judge Charles Tarvin upheld AmeriHealth's denial on June 12. Current DHS Director Jerry Foxhoven on Aug. 4 concurred and issued the agency's "final decision" to deny the twice-daily care.
**The appeal:** McDonald is challenging the denial in district court.



### ALANNAH BAILEY

**Six-year-old girl's converted van denied**

**The patient:** Alannah Bailey, 6, of Norwalk, has spinal muscular atrophy, a rare degenerative disease that attacks motor neuron cells and has left her unable to walk.
**Care denied:** Bailey's family in July 2016 sought a $17,500 conversion to their van to allow the 6-year-old to drive her 300-pound motorized wheelchair directly into the vehicle. Her family had raised $11,133 and was asking Medicaid to pay the rest. AmeriHealth denied the claim several times, saying it was not a medical necessity.
**The ruling:** Iowa Administrative Law Judge Carol Greta on Dec. 23, 2016, ruled in the family's favor: "Bluntly put, without the modifications, continuing to transfer and transport Alannah as done now endangers her life."

---

> **"Our most vulnerable citizens are suffering from the denial of care."**
>
> Jen De Kock  Des Moines attorney

## Medicaid

Continued from Page 1A

been unfairly denied medical care since the state turned over management of the $4.8 billion program to for-profit companies in April 2016.

A Des Moines Register investigation into those 200 cases found an appeal process that presents a thicket of administrative and legal roadblocks to patients and their families, who must clear hurdle after hurdle to secure care.

Specifically, the Register investigation found:

‖ **Due process violations:** In at least four cases, administrative law judges concluded or the Medicaid recipient alleges in ongoing district court appeals that the companies failed to properly notify recipients about health care reductions and their appeal rights.

‖ **Denials of in-home care:** Medicaid expenses for in-home care that had been routinely approved when the state ran the program are now being rejected by managed-care providers as unnecessary and outside the scope of what the program authorizes. Families say they are left struggling to care for their loved ones, who are losing their independence and autonomy.

‖ **Endless appeals:** Even when Medicaid patients win their cases in administrative hearings, the managed-care companies routinely "re-evaluate" their health needs, again denying their care in as little as 60 days. That forces patients to embark on yet another round of appeals.

"The denial of care for Medicaid services, especially those who had already been approved through the state, is an endemic problem in Iowa," said Jen De Kock, a Des Moines attorney who represents the family of a suicidal teen who repeatedly was denied placement at a psychiatric medical institution for children.

An annual federal report on the three managed-care providers — Amerigroup, Amerihealth Caritas and United-Healthcare — called on each to improve its appeals process.

"I think they (private Medicaid companies) are trying to cut costs and maybe get a reward for the amount of money they save," said Ken Sander, vice president of Midwest Respiratory Care, a business in Lincoln, Nebraska, that has operated for more than seven years in Iowa and whose employees testified on Carrigan's behalf in the administrative hearing.

While Carrigan's appeal continues, Sander's company has supplied her the specialized chair — even though it has never been paid for it.

"On our end, we know we are right," Sander said. "You don't let a disabled person sit in a bed or choke."

It's understandable that managed-care companies would want to make sure medical equipment is necessary to prevent excessive taxpayer costs, said



Ann Carrigan, 70, lives at a Spencer nursing home and spends up to 10 hours a day in her wheelchair. She has poor trunk control and spasticity of her limbs due to advanced cerebral palsy. Her doctors say she needs this special chair. UnitedHealthcare declined her doctor's requests to pay for the chair. A court challenge in the matter is ongoing. BRIAN POWERS/THE REGISTER

### About this project

In August 2017, the Des Moines Register requested copies of all Medicaid appeals that went before Iowa administrative law judges and involved the private companies that began managing the Medicaid program on April 1, 2016.

The Iowa Department of Human Services provided the Register with copies of 201 cases, all highly redacted, with the names of Medicaid recipients and their physicians and medical facilities blacked out. (The DHS cited federal privacy laws in justifying the redactions.)

Of the 201 cases, the administrative judges ruled in favor of the Medicaid recipient 25 times and in favor of the private companies 38 times. The appeals were withdrawn — generally by the private companies — 138 times before the hearings were held, the records show.

The Register's review included seven appeals that were outside of the fiscal year parameter in which the DHS tracks and compares data.

### JASON CLAYWORTH

An investigative journalist who has worked for the Register since 1998. His focus is government spending and accountability. Jason is an Iowa native and a Drake University graduate. jclayworth@dmreg.com; 515-699-7058; @JasonClayworth

Carrigan's son and guardian, Mark, of Cedar Rapids.

But managed-care companies are making those decisions without ever examining or meeting with the patient, he and other family members of Medicaid recipients say.

"I can see both sides," Mark Carrigan said. "There's a need to prevent abuse, but (UnitedHealthcare) didn't actually see my mother."

UnitedHealthcare declined to comment about its Iowa appeals, and the Register's requests over three months for an interview with top executives from the Iowa Department of Human Services, which oversees the state's Medicaid system, were denied.

In a public budget meeting Nov. 28 before Gov. Kim Reynolds, DHS Director Jerry Foxhoven said Iowa Medicaid oversight has never been stronger.

The agency has seven contracts that help the DHS track more than 1,000 data points on Medicaid patient outcomes. That's more than were tracked when the state managed the program before April 2016, he said.

"They have lots of oversight, and they will continue to have that," Foxhoven said about the companies that manage Medicaid.

But critics say despite that oversight, Medicaid clients too often face rejections for care — even after it has been upheld by an administrative law judge and the state.

"Our most vulnerable citizens are suffering from the denial of care," De Kock said.

### Drop in appeals blamed on faulty process

Despite complaints about the appeals process after Iowa privatized Medicaid, appeals for denied care have dropped since the state stopped managing the program.

The 194 appeals against AmeriHealth, UnitedHealthcare and Amerigroup in the fiscal year that ended June 30, 2017, are 28 to 44 percent fewer than in the previous five years, Iowa DHS records show.

DHS spokesman Matt Highland said the drop may be linked to an appeals process that is first handled internally with the private companies.

Critics agree that the appeals that make it to an administrative hearing tell

See MEDICAID, Page 11A

Copyright © 2025 Newspapers.com. All Rights Reserved.

Newspapers
by ancestry
https://www.newspapers.com/image/366871269

The Des Moines Register (Des Moines, Iowa) · Sun, Jan 14, 2018 · Page A11
Downloaded on May 12, 2025

METRO EDITION **DESMOINESREGISTER.COM** ‖ SUNDAY, JANUARY 14, 2018 ‖ **11A**

## MEDICAID DENIAL    AN ENDEMIC PROBLEM

## Medicaid

Continued from Page 10A

only part of the story.

They note that appeals weren't filed for denied care in the cases of Orange City quadriplegic Todd Mouw, who died in July, or 25-year-old Des Moines quadriplegic Louis Facenda Jr., who was left in an unchanged diaper for as long as 12 hours at a time for several weeks over the summer.

They contend the system discourages appeals by requiring Medicaid recipients to first appeal to the management company through an internal process, and then the companies do a poor job of notifying Medicaid recipients and their caregivers that they can appeal to an administrative law judge.

They point to administrative rulings as evidence.

Administrative Law Judge Kristine Dreckman in an April 12, 2017, ruling said Amerigroup failed to notify a Medicaid recipient that the company was missing a written consent necessary to move forward with an appeal.

Amerigroup waited until the appeal deadline was nearly closed before it informed the client that the appeal was being dismissed for failing to comply with the procedural requirement.

"This strikes the undersigned administrative law judge as a sort of 'gotcha' tactic employed by Amerigroup to avoid determining the underlying dispute on the merits, and runs afoul of basic due-process requirements," Dreckman wrote in her order reversing the compa-



Amerigroup denied a request from Betty Frink's doctor, who said that she should be provided with nine nursing or social worker visits over a two-month period to assess her pain levels, document her diabetic management and assess other medical conditions. Above, her husband Mark helps her inject insulin on Dec. 28 in Des Moines. BRIAN POWERS/THE REGISTER

ny's denial of care.

In another case, Mark Frink, the husband of Des Moines Medicaid recipient and pancreatic cancer survivor Betty Frink, testified in a May 17 administrative hearing that Amerigroup had not provided a copy of 78 exhibits used to deny her care.

Amerigroup employee Sandra Petersen told Administrative Law Judge Charles Tarvin the company would mail the information.

Federal law mandates the companies give Medicaid recipients timely notice about denied claims and provide them an opportunity for a fair hearing.

At a minimum, every notice must explain the denial, the reasons for the decision, the right to request an appeal and the procedures necessary to appeal.

Cyndy Miller, an attorney for Disability Rights Iowa, said the companies not only fail to send recipients proper notice that their care is being reduced but sometimes incorrectly conclude that recipients agree to reduced care.

Miller's group filed a lawsuit in June contending that Iowa is depriving thousands of Iowans with disabilities the legal right to live safely outside of care facilities. It includes allegations that the companies have failed to give notice or an opportunity to appeal cuts to in-home care or other services they previously received.

Nationally, there is no comprehensive source that tracks Medicaid appeals, although states often look at appeals to measure overall care.

"Every state has almost a library of metrics they can choose from and use to measure (Medicaid) performance," said Vern Smith, a former Medicaid director for Michigan who now works as an adviser for Health Management Associates, a national research and consulting firm.

### Ignored rulings a 'systemic' trend

When administrative law judges rule in favor of Medicaid recipients, the decisions often get ignored amid a tangled bureaucratic process, according to a quarterly report published in July by Iowa's Long-term Care Ombudsman.

It can take months for a Medicaid recipient who's been denied coverage to get a hearing before a judge. And even if a judge orders the coverage be provided, the victory can be short-lived.

That's because the managed-care companies can re-evaluate the Medicaid recipient's health at virtually any

See MEDICAID, Page 12A

---

## 'SYSTEMIC' DENIAL — A FAMILY'S STRUGGLE TO GET CARE

Critics of Iowa's move to privately managed Medicaid complain that patients denied care must navigate a labyrinthine appeals process with no guarantee that even if they win their care won't be denied again in the future.

Here's a timeline of a case involving a 12-year-old Iowa Medicaid recipient who had her care request denied, prevailed in an appeal before an administrative law judge but again had that same care denied later.

**The case:** In 2004, Ben and Kristal De Jong of Cedar Falls became the foster parents — and later the adoptive family — of an infant girl who had been removed from her biological family because of drug abuse and neglect.

The girl — now 12 and identified in court documents as "K.D." — struggles with anxiety and attachment disorders. This is a timeline of the De Jongs' efforts to obtain help for her through Medicaid.

**2012**

K.D. is diagnosed with anxiety and Reactive Attachment Disorder, known as RAD and common among adopted children who have suffered early abuse or neglect. The effects can include trust issues, aggression, lying and theft.

**May 11, 2016**

K.D. becomes upset in her counselor's office and pounds the windows. She is transported to a hospital, where she says she wants to kill herself. A judge issues an emergency hospitalization order.

**May 12, 2016**

K.D. is admitted to a mental health institute, a facility where some of the staff is untrained in treating children with attachment disorders.

**May 17, 2016**

Ben and Kristal De Jong ask Amerigroup to place K.D. at the Change Academy at Lake of the Ozarks, commonly known as "Calo." The Missouri facility is a psychiatric medical institute that specializes in RAD. Iowa has no similar facility.

**May 18, 2016**

K.D.'s psychiatrist supports her placement at Calo. "Despite extensive outpatient treatment and medications, her behaviors related to attachment disorder have continued to escalate." "I feel the program she goes to needs to have 24-hour attachment therapy."

**May 20, 2016**

K.D. is discharged from the mental health institute.

**June 22, 2016**

Amerigroup denies coverage for K.D.'s placement at Calo. "Although you have periods of anger episodes you are able to control your anger and are not placing yourself or others at risk in a manner which would require 24-hour monitoring in a residential setting," the denial letter states. The family asks Amerigroup to reconsider.

**June 27, 2016**

K.D. is admitted to a hospital after she repeatedly bangs her head on a floor and threatens to jump from a window.

**July 5, 2016**

K.D. is discharged from the hospital.

**July 11, 2016**

Amerigroup affirms its decision to deny K.D. placement at Calo. "We still do not think this is medically necessary for you," its letter says. The family files an appeal.

**July 17, 2016**

K.D. is again admitted to the mental health institute after she breaks a stick over her knee and throws it at her mother. She also bangs her head on a counter and pulls out her hair, then tries to run from police.

**Aug. 23, 2016**

K.D. is discharged from the mental health institute.

**Aug. 24, 2016**

K.D.'s psychiatrist sees her again and recommends her placement at a specialized institution such as Calo.

**Sept. 8, 2016**

Ben and Kristal De Jong appear with an attorney for a hearing before the Iowa Department of Inspections and Appeals to appeal Amerigroup's coverage denial. Mark Levy, a doctor for Amerigroup, testifies the denial was based solely on records submitted to the company and reviewed by two physicians.

**Oct. 12, 2016**

Iowa Administrative Law Judge Emily Kimes-Schwiesow issues a "proposed decision" to reverse Amerigroup's denial, ruling that K.D. has become increasingly violent and needs in-patient treatment. She notes that K.D. has had at least eight emergency room visits, three hospitalizations and multiple admissions to mental health institutes in the previous eight months.

**Oct. 21, 2016**

K.D. is admitted to Calo.

**Oct. 24, 2016**

Then-Iowa Department of Human Services Director Chuck Palmer issues a "final decision" upholding K.D.'s placement at Calo.

**May 23, 2017**

Amerigroup sends Ben and Kristal De Jong a letter saying it has determined K.D.'s placement at Calo, which isn't scheduled to end until Sept. 8, isn't medically necessary. The family launches an internal appeal.

**May 30, 2017**

The De Jongs' attorney sends Amerigroup a letter demanding the company abide by DHS' final decision.

**June 9, 2017**

Amerigroup confirms its denial of K.D.'s care at Calo and directs the De Jong family to request another hearing before an Iowa administrative law judge.

**Aug. 7, 2017**

The De Jong family sends then-Iowa Medicaid Director Mikki Stier and DHS Director Jerry Foxhoven a letter outlining a legal basis to pursue a civil case against DHS for failing to enforce its decision upholding K.D.'s placement at Calo. The family asks DHS to respond by Aug. 14.

**Sept. 4, 2017**

With no response from DHS, the family files a district court lawsuit against Iowa, Gov. Kim Reynolds, Foxhoven, Stier and Amerigroup alleging the state violated K.D.'s constitutional rights and seeking a court order forcing Amerigroup to maintain K.D.'s services at Calo until her Sept. 8 end date.

**Nov. 6, 2017**

The district court case is dismissed at the De Jong family's request after a resolution is found. The resolution is subject to a confidentiality agreement that precludes saying whether the girl is being provided the services.

Copyright © 2025 Newspapers.com. All Rights Reserved.

Newspapers
by ancestry
https://www.newspapers.com/image/366871271

The Des Moines Register (Des Moines, Iowa) · Sun, Jan 14, 2018 · Page A12
Downloaded on May 12, 2025

12A ▮ SUNDAY, JANUARY 14, 2018 ▮ **DES MOINES SUNDAY REGISTER**  METRO EDITION

## MEDICAID DENIAL   AN ENDEMIC PROBLEM



"It's not what people imagine for their first child," says Lindsey Calby, a Norwalk mother who sought a conversion to her van to transport Alannah, her 6-year-old daughter. Alannah suffers from spinal muscular atrophy, which effects her motor nerve cells in the spinal cord, affecting her ability to walk, eat and breathe. BRIAN POWERS/THE REGISTER

## Medicaid

Continued from Page 11A

time to determine whether care is medically necessary and appropriate.

Even after an administrative order to provide services, the companies can make a new determination — based on an updated evaluation — that the services are unnecessary and deny them.

"This keeps the member in the appeal process. In some cases, members have reported having to start the appeal process over again after 60 days," the ombudsman's report said, labeling it a "systemic" trend.

Such re-evaluations were uncommon when Iowa managed its Medicaid program.

Deanna Clingan-Fischer, the long-term care ombudsman at the time the report was written, said she was aware of multiple cases where re-evaluations have occurred under the privatized system but said she couldn't provide exact numbers.

Iowa Ombudsman Kristie Hirschman, whose office is apart from the Long-Term Care Ombudsman and investigates a separate segment of Medicaid complaints, said she too was aware of cases where judges' rulings were skirted through a new managed care review.

Cyndy Miller, the Disability Rights Iowa attorney, also said her group has dealt with the matter.

At the Nov. 28 meeting with the governor, Foxhoven said Iowa ranks among the top in Medicaid customer satisfaction in July, citing a J.D. Power survey released in July. J.D. Power refused to disclose who paid for the survey or how it was conducted.

### Iowa has fined Medicaid companies

Iowa's long-term care ombudsman in early 2016 warned lawmakers that failure to provide proper oversight of privatized Medicaid would result in the types of fraud and mismanagement that have dogged other states.

The ombudsman — along with roughly a dozen state agencies, departments or key officials — recommended a $17 million plan that included hiring 134 people to investigate individual claims and monitor the groups.

Ultimately, Iowa hired four employees for oversight, including one with the state's ombudsman's office and three with the long-term care ombudsman. In September, one of those positions in the long-term care ombudsman's office was eliminated by ongoing budget constraints.

Since Iowa has shifted to managed care, state officials have recorded at



Nathan McDonald of Ankeny was born with cerebral palsy and needs assistance with daily functions, such as dressing, grooming himself and cleaning up after using the restroom. BRYON HOULGRAVE/THE REGISTER

### Iowa's managed care

Iowa had for decades managed its own Medicaid program.

That changed in April 2016 when Iowa followed a trend taken by dozens of other states to hire businesses to manage its Medicaid program.

The goal was to improve services, save money and create budget predictability.

The three companies hired by Iowa — AmeriHealth, UnitedHealthcare and Amerigroup — are paid up to 12 percent of the program's annual $4.8 billion cost.

The state's previous annual management costs were between 4 and 8 percent. Advocates of private management say a long-term savings can be achieved through system-wide efficiencies implemented by the companies.

But savings, so far, have been elusive.

In October, the Department of Human Services announced UnitedHealthcare and Amerigroup were granted 3.3 percent increases following complaints from the companies that they were losing millions of dollars each year in managing the Iowa program.

AmeriHealth terminated its contract with the state late last year following an unsuccessful effort to renegotiate its rates.

Iowa is currently searching for a third company to take AmeriHealth's place. In the meantime most of the roughly 215,000 people previously managed by the company have been transferred to UnitedHealthcare and Amerigroup. (The state of Iowa has resumed management of about 10,000 of those cases.)

least 501 "corrective actions" or compliance violations against the private companies for failing to follow Medicaid rules. As a result, the DHS has issued fines of as much as $1.4 million, state data and quarterly reports published by the agency show.

However, at least $610,751 of those fines have been waived, records show.

The contractual violations are linked to tardy or improper reporting and decisions involving Medicaid recipients' care. Federal rules set general guidelines for companies to handle grievances and appeals, including expedited resolutions when critical care is in question.

UnitedHealthcare was the subject of

199 of the DHS fines or corrective actions, including five instances from July 2016 to September 2016 when appeals were not resolved in a timely way.

Another report — an annual external quality review required by the federal government and released in July — made recommendations that included urging each company to fix its appeals process:

▮ **Amerigroup** was told to follow its policy to resolve all "preservice" appeals within 30 days and update procedures to ensure Medicaid recipients are properly notified about service and appeal issues.

▮ **AmeriHealth** was told to provide information to Medicaid recipients about how to appeal or request a hearing.

▮ **UnitedHealthcare** was told to develop a process to inform Medicaid recipients about the limited time available to present evidence in expedited appeal cases.

Iowa has a 2 percent "performance withhold" that state officials can use to penalize companies that do not meet their basic duties.

A document released Oct. 31 by the DHS estimates the companies will be paid 75 percent or more of the withheld money.

### People 'need these services'

States can face federal consequences when Medicaid appeals processes are inadequate.

Beginning this year, a new rule adopted by the Centers for Medicare & Medicaid Services (CMS) requires states to have formal monitoring systems in place for all programs managed by private companies.

The new rule includes appeal and grievance systems and requires states to comply with minimum reporting standards. That gives hope to advocates such as Kimberly Weber, an executive of Iowa Home Care. The company contends that Medicaid companies have wrongfully denied service payments to hundreds of its clients.

"We're hoping, for everyone, this gets figured out," Weber said.

Nathan McDonald hopes the same. The 32-year-old Ankeny resident with cerebral palsy has been denied medical care service several times and has challenged the denials in district court.

AmeriHealth in January 2017 cut McDonald's in-home service visits from twice daily to five times a week, saying anything more was medically unnecessary.

"There are people out there, including myself, that need these services," said McDonald, who says the twice-daily in-home visits allow him to live independently. "Otherwise, why are they here?"

Copyright © 2025 Newspapers.com. All Rights Reserved.